IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL K.,[1] | )<br>)<br>) |
| Plaintiff, | )<br>) No. 20 C 4437 |
| v. | )<br>) Magistrate Judge |
| KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,[2] | ) Maria Valdez<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Michael K.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 21] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On October 20, 2016, Plaintiff filed claims for DIB and SSI, alleging disability since December 31, 2014. The claims were denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 10, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On June 26, 2019, the ALJ denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2014. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease; left upper extremity (shoulder) disorder; right upper extremity (elbow) disorder; and lower extremity neuropathy. The ALJ concluded at

2

step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal a listed impairment.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: occasional sue of an assistive device (cane) for ambulation; can occasionally climb stairs or ramps; can never climb ladders, ropes, or scaffolds; has unlimited balance; can occasionally stoop, kneel, crouch, and crawl; can frequently reach, including overhead with the left upper extremity; unlimited bilateral handling, fingering, and feeling; can occasionally push or pull with the left lower extremity and frequently push or pull with the right lower extremity; and must avoid all exposure to workplace hazards, including moving machinery and unprotected heights.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a salesperson, door assembler, cashier, repossessor, auto salesman, waiter, bartender, final assembler, construction worker, tow truck driver, prep cook, kitchen helper, or grounds keeper. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

I.  **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

6

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ incorrectly assessed Plaintiff's symptoms and limitations; and (2) the ALJ incorrectly assessed Plaintiff's RFC.

In advancing his first argument, Plaintiff contends, *inter alia*, that the ALJ failed to sufficiently account for Plaintiff's complaints of disabling pain. In her decision, the ALJ briefly noted Plaintiff's testimony that "[h]e has back pain and wears a back brace and uses a cane which was not prescribed." (R. 20.) In fact, Plaintiff's complaints of pain were far more involved. As summarized by Plaintiff:

> Mr. Karol had [a] significantly limited ability to perform activities of daily living. His pain limited walking and standing to 30-to-40 minutes. (AR 51.) He could not lift more than ten pounds with his left arm without experiencing "really bad" pain. *Id.* His pain limited his right arm lifting to 20 pounds. (AR 51.) Sometimes his shoulder popped while performing activities of daily living and cause[d] pain. (AR 371.) He had difficulty navigating stairs. (AR 52.) He relied on his fiancée to do chores due to this pain. *Id.* Mr. Karol reported being able to help with chores for 10-to-15 minutes before being indisposed for the day. (AR 53.) His impaired ability to reach and stoop impaired his ability to get dressed and groom. (AR 266, 363.) He needed help to cook and to get up from the toilet. *Id.* Due to pain he avoided showering, could only cook for five-to-ten minutes before needing to sit or lie down, and could only do laundry and dishes [for] limited periods. (AR 52, 267-68, 304.)

(Pl.'s Br. at 7.)

Further, Plaintiff's reported pain symptoms are consistent with the objective medical evidence in the record. Plaintiff summarizes that evidence as follows:

> Mr. Karol injured his head, back, and shoulders in 2014. (AR 36, 46, 307, 363, 367, 371, 673.) . . . Treating providers observed limited and painful back and shoulders range of motion. (AR 358, 364, 371, 452-53, 759, 787, 1146, 1527, 1537, 1792, 1802, 1807, 1812.) . . . Straight leg testing recreated back pain. (AR 376, 454, 1091.) Treating providers observed painful cervical spine range of motion (AR 452) and back tenderness (AR

7

> 712). . . . Treating providers observed shoulder and lumbar spine tenderness with painful limited range of motion. (AR 378, 759, 1146, 1807, 1812.) In late 2018, doctors observed limited lumbar range of motion and that he shook upon exertion. (AR 1527, 1537.) In June 2017, he had spine surgery (AR 36, 1497, 1574) and in November 2018 (AR 1540) shoulder surgery. (AR 778, 1517, 1776). After his surgeries [he] reported severe pain. (AR 1200) and persistent shoulder pain (AR 1817). Treating providers observed he still needed a cane to walk and could not walk more than 200 feet without pain. (AR 1208.) Mr. Karol reported continued low back pain that radiated to his legs and caused weakness. (AR 1016, 1066, 1497, 1505, 1524, 1527, 1537, 1766.) In July 2018 he developed new unrelated swelling and pain in his legs. (AR 1646.) Treating providers observed leg weakness due to pain and a straight leg raise test recreated the pain. (AR 1091. . . .
>
> Mr. Karol was prescribed a regimen of over 20 milligrams daily of Dilaudid for his pain AR 272, 944, 1145). Dilaudid is hydromorphone, an opioid medication typically reserved for severe trauma and cancer pain, four to seven times more potent than morphine. (AR 272, 944, 1145.) . . . Physicians were cautious about prescribing this opioid because of its powerful effects, but other pain medications such as Norco and Percocet were ineffective at treating his pain and he was allergic to others. (AR 1775.) Mr. Karol's treating pain management [specialist] drafted a letter to Mr. Karol's prescription manager encouraging them [to] approve the daily use of 24 milligrams of hydromorphone, as it "has been the most beneficial for this patient and it is needed at this daily dosing." *Id.* Furthermore, Mr. Karol had a multitude of steroid injections in an attempt to control his pain, but those injections offered no relief or minimal temporary relief. (AR 374, 376, 378, 429, 431, 435, 442, 445, 448-49, 758, 778.) His treating pain management specialist insisted Mr. Karol be prescribed high daily doses of hydromorphone to manage pain after noting that so far six injections failed to manage pain. (AR 1775.)

(Pl.'s Br. at 6-9.)

Pertinent to Plaintiff's argument concerning his pain symptoms, an ALJ must "fully engage[] with the evidence supporting [the claimant's] claim of disabling pain." *Plessinger v. Berryhill*, 900 F.3d 909, 914 (7th Cir. 2018). Further, an ALJ "must always articulate her reasons for rejecting a plaintiff's complaints of pain." *Gordon v. Saul*, No. 18 C 07096, 2021 U.S. Dist. LEXIS 5157, at \*14 (N.D. Ill. Jan.

11, 2021) (citations and internal quotations omitted). The ALJ did not do so here. Instead, the ALJ only generically stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 20.) The problem is that the ALJ provided no specific explanation of how Plaintiff's reported pain symptoms were inconsistent with the medical evidence in the record. For instance, while the ALJ noted that in 2014 Plaintiff "had a steady gait" and "intact motor and sensory function" (*id.* at 21), she did not provide any explanation of how those findings supported or undermined Plaintiff's complaints of pain. Similarly, while the ALJ noted that in 2017 Plaintiff was reported to have "normal balance" and "normal reflexes, sensation, coordination, and motor strength" (*id.* at 22), she again provided no explanation of whether and how those findings were consistent or inconsistent with Plaintiff's subjective pain symptoms.

In failing to articulate her reasons for apparently rejecting Plaintiff's complaints of pain, the ALJ did not build the requisite logical bridge from the evidence to her conclusion that Plaintiff could work despite his reported pain symptoms. *See Megan B. v. Saul*, 18 C 1836, 2020 U.S. Dist. LEXIS 101344, at *12 (N.D. Ill. June 10, 2020) ("By failing to give adequate reasons for finding Plaintiff's subjective allegations of pain to be incredible, the ALJ did not build a logical bridge between the evidence and his conclusions that could be evaluated by this Court.") (citation omitted). Given the lack of any specific explanation provided by the ALJ,

9

remand is required because it is impossible for this Court to properly evaluate the ALJ's credibility determination as to Plaintiff's pain symptoms. *See Gilkey v. Barnhart*, 417 F. Supp. 2d 949, 964 (N.D. Ill. 2006) (remanding where it was "unclear whether the ALJ found [claimant's] allegations with respect to . . . her allegations of pain to be credible"); *Allen v. Astrue*, 869 F. Supp. 2d 924, 940 (N.D. Ill. 2012) ("When faced with a claimant alleging subjective pain symptoms, an ALJ must evaluate the credibility of a claimant's testimony about his pain.") (citation omitted). Ultimately, this matter must be remanded because the ALJ's implied findings as to Plaintiff's complaints of pain "lack[] any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted).

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that all of Plaintiff's symptoms are properly evaluated and Plaintiff's RFC is properly assessed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 21] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

**DATE:** **January 31, 2022**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**

11